IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2010

## STATE OF TENNESSEE v. LARQUIETTA TAYLOR-FISHER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-07356      John T. Fowlkes, Jr., Judge**

_____

**No. W2009-02040-CCA-R3-CD  - Filed April 29, 2010**

_____

The defendant, Larquietta Taylor-Fisher, pled guilty in the Shelby County Criminal Court to DUI, first offense, a Class A misdemeanor; leaving the scene of an accident, a Class B misdemeanor; and three counts of reckless aggravated assault, a Class D felony, and was sentenced by the trial court to an effective sentence of two years, with thirty days to serve and the remainder of the time on supervised probation.  In a timely appeal to this court, she argues that the trial court abused its discretion in denying her request for judicial diversion. Following our review, we affirm the sentencing determinations of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Jennifer D. Fitzgerald (on appeal) and Brett Stein (at trial), Memphis, Tennessee, for the appellant, Larquietta Taylor-Fisher.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Susan Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of a December 14, 2007, Memphis traffic accident in which the intoxicated defendant struck another vehicle, causing it to burst into flames, and then fled from the scene.

The defendant was indicted by a Shelby County Grand Jury on three counts of aggravated assault; one count of DUI, first offense; one count of reckless driving; and three counts of leaving the scene of an accident. On July 1, 2009, the defendant pled guilty to three counts of reckless aggravated assault, one count of DUI, and one count of leaving the scene of an accident in exchange for concurrent sentences of two years for each of the reckless aggravated assault convictions, eleven months, twenty-nine days for the DUI conviction, and one day for the leaving the scene of an accident conviction.[1] The manner of service of the defendant's sentence, including whether she would be granted judicial diversion for the assault offenses, was left to the trial court's later determination. The prosecutor recited the following factual basis for the pleas at the guilty plea hearing:

> Had this matter gone to trial, the State would have . . . shown that on December 14th of 2007, at 9:29 p.m., [the defendant] was involved in an accident at Lamar Avenue and Airways where she hit the . . . victim's vehicle causing it to burst into flames and then left the scene.
>
> Post-office police officers in Unit Number 72 . . . observed the suspect leaving the intersection of the accident and followed her to [the residence of her in-laws] . . . where they observed her behind the steering wheel of the vehicle.
>
> They then observed her get out of the vehicle and go into [the residence] and they called for the [Memphis Police Department ("MPD")] to make the scene. MPD officers made the scene and found the suspect laying [sic] in a bed in the front room of the house.
>
> Officers on the scene advised the suspect to get up out of the bed and she was unable to get up and needed help to get out of bed because she was too intoxicated.
>
> She smelled strongly of alcoholic beverage, had slurred speech and was . . . unable to stand or walk on her own without assistance.
>
> Once in custody, the suspect freed herself from her handcuffs and became enraged and abusive towards the officers. A DUI unit was called. They attempted to give her the [blood-alcohol content test,] but she refused to take it.

---

[1]The State nolle prosequied two of the counts of leaving the scene of an accident and the reckless driving count.

-2-

Three victims were injured in the other vehicle that the suspect hit and were transported to the [Regional Medical Center] in stable condition.

At the sentencing hearing, the thirty-nine-year-old defendant testified that she had two children and was currently separated from her husband. She said she had been employed at Swift Transportation for nine years and was confident that she would be able to abide by the conditions of probation, including the payment of probation fees and restitution.

When asked by the trial court to describe how the accident occurred, the defendant testified that she had been studying at home for her board examination for her master's degree, during which time she had drunk two glasses of wine, when her computer crashed, which meant that she had to go to her office to complete her assignments. As she was returning home, she noticed a car beside her that was weaving in and out of traffic, which frightened her. The defendant explained that she had been receiving threatening telephone calls since the previous weekend when her vehicle, containing her cell phone and identification, had been stolen. Believing that the people in the erratically driven car were the ones who had stolen her vehicle and threatened her, she sped up in an attempt to escape, turned a corner wide without yielding to oncoming traffic, and struck the victim's vehicle.

The defendant testified that she returned to consciousness after the collision to hear someone say, "[W]e're going to kill this 'B'." She said she had been prepared to check on the occupants of the other vehicle, but, after her life was threatened, she "just tried to secure [herself]" and get to a safe place to call the police. For that reason, she drove to the home of her in-laws, only two to three miles away, instead of to her own home in Millington. The defendant insisted that she wanted to return to the accident scene, but the police would not let her, which, she said, made her "very irate and livid."

Upon further questioning, the defendant testified that she did not call the police because she could not find her cell phone and there was no telephone in her relatives' home. She said she became abusive with the police officer because he asked her what she was doing in that area, which made her believe that he was "stereotyping [her]." In support for her claim that the victims had threatened her life, the defendant related that the police officer who had responded to the accident scene, whom she later encountered at the Regional Medical Center, "said that he had to apprehend one of the suspects because he was . . . a hothead."

At the conclusion of the hearing, the trial court found that the defendant was not a suitable candidate for judicial diversion or full probation and therefore sentenced her to serve thirty days in the county jail, with the remainder of her time on supervised probation.

## ANALYSIS

-3-

The defendant contends on appeal that the trial court did not afford enough weight to the factors in her favor, including her lack of a serious criminal record and positive educational, familial, and employment history. The State argues that the trial court's denial of judicial diversion or a sentence involving full probation was proper. We agree with the State.

Following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2008). A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to a misdemeanor or Class C, D, or E felony; has not been previously convicted of a felony or a Class A misdemeanor; and who is not seeking deferral for a sexual offense, a violation of Tennessee Code Annotated sections 71-6-117 or 71-6-119, or a Class A or B felony. Id. § 40-35-313(a)(1)(B)(i). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court considers (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Id.

The record reflects that the trial court considered each of the above factors in its determination of whether the defendant should receive judicial diversion. The court noted that the defendant had several "very positive factors" weighing in her favor, including the fact that her physical health was good, she was well-educated, she had "had very solid jobs," and her family supported her. The court further noted that the defendant's criminal record

-4-

was minimal, consisting merely of a disorderly conduct charge that had been dismissed and minor driving offenses that had occurred over ten years earlier. The court found, however, that these positive factors were outweighed by the seriousness of the offense, the need for deterrence in a county in which there were a substantial number of alcohol-related traffic accidents, and the fact that the defendant had not evidenced real amenability to correction. With respect to the defendant's amenability to correction, the trial court stated in pertinent part:

> But what is a truly true concern is the defendant's amenability to correction.

> I know acceptance of the responsibility is not the controlling factor, but it is at least a factor to take into account.

> The prosecutor is correct in making the observation about the defendant. Although towards the end of her testimony she said that she accepts the responsibility.

> That was not demonstrated in her . . . testimony. Everyone else seemed to be at fault. People who were weaving in and out of traffic. Also, after the accident occurred, apparently someone said something that she heard. Although there's nothing in the officer's information that indicates and supports that.

> The officers that arrested her, they said something to . . . upset her. And she seems to place blame on everyone but herself.

> And so, in balancing the positive factors about the defendant and her history against the circumstances of the offense, amenability to correction, which just doesn't seem as though I can place amenability to correction in the defendant's favor, as well as deterrence value and whether diversion would serve the interests of the public or the defendant. Those negative factors far outweigh the positive factors about the defendant's history.

The record supports the trial court's determination that those factors favoring the grant of diversion were outweighed by those favoring denial. The intoxicated defendant struck another vehicle occupied by at least three individuals, causing it to burst into flames; fled the scene rather than attempting to render aid to the victims or call for assistance; was belligerent with the police officers who arrived to arrest her; and later attempted to cast blame for the accident and her subsequent behavior on others rather than accepting responsibility for her own actions or expressing any genuine remorse. We, therefore, conclude that the trial court

did not abuse its discretion in denying the defendant's request for judicial diversion.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the sentences imposed by the trial court.

_____
ALAN E. GLENN, JUDGE